**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DEVRON A. REED,** *et al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil No.     **PJM 13-3265** |
| v. | * | |
| | * | |
| **BANK OF AMERICA** | * | |
| **HOME LOANS,** *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM OPINION**

Plaintiffs Devron A. Reed and Marja L. Reed ("the Reeds")[1] have sued Defendants Bank of America Home Loans and Bank of America, N.A. (hereinafter collectively "BANA"). They allege violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*, the Maryland Consumer Protection Act (MCPA), Md. Code Ann., Com. Law § 13-101, *et seq.*, as well as common law breach of contract and fraud. BANA has filed a Motion to Dismiss the First Amended Complaint (ECF No. 28), which the Reeds oppose. The parties' submissions have been reviewed, and the Court finds that no hearing is necessary. For the following reasons, BANA's Motion to Dismiss the First Amended Complaint (ECF No. 28) is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] This action originally involved a third Plaintiff, Theodore Lindsey. On October 24, 2014, BANA filed a Suggestion of Death Upon the Record (ECF No. 29), noting the death of Plaintiff Lindsey. Federal Rule of Civil Procedure 25(a)(2) provides: "After a party's death, if the right sought to be enforced survives only to or against the remaining parties, the action does not abate, but proceeds in favor of or against the remaining parties. The death should be noted on the record." Here, the rights to be enforced by Plaintiff Lindsey were not extinguished on his death, but arguably passed through to the other Plaintiffs. However, the Court deemed BANA's Motion to Dismiss Plaintiff Theodore Lindsey (ECF No. 36) **MOOT** because Plaintiff Lindsey had already been terminated from the case by the Clerk of Court. *See* ECF No. 41.

## I. FACTS[2]

On November 29, 2007, the Reeds obtained a loan for $380,000.00 from First Meridian Mortgage, wherein Mortgage Electronic Registration Systems, Inc. (MERS) was designated as nominee for the Lender (the "Loan"). The Loan was secured by a Deed of Trust relating to property located at 15005 Leeland Road, Upper Marlboro, Maryland 20774. Defs.' Mot. Dismiss First Amended Complaint (Defs.' Mot. Dismiss FAC), Ex. A, ECF No. 28-1.

At some point in 2008, the Reeds experienced a major accounting problem with their original loan servicer, which they say was related to their escrow account. Am. Compl. ¶ 2. The problem, they aver, was never resolved. *Id.*

On September 22, 2011, MERS assigned all interest in the Deed of Trust to BANA. Defs.' Mot. Dismiss FAC, Ex. B, ECF No. 28-2. According to the Reeds, the accounting problem they experienced with their original loan survived the transfer. Am. Compl. ¶ 3. Supposedly due to this accounting problem, the Reeds began to receive notices of intent to foreclose from BANA. *Id.* In an effort to resolve the problems they were experiencing with the Loan, the Reeds applied for a loan modification, and BANA approved them for a permanent loan modification in August 2012. *Id.* ¶ 4. In compliance with the initial terms of the modification, the Reeds returned two signed copies of the modification agreement to BANA by August 21, 2012 and sent certified funds in the amount of $2,111.48 to BANA before September 1, 2012. *Id.* ¶ 5.

On August 24, 2012, at about the time of the loan modification approval, the Reeds also received a letter from BANA informing them that their mortgage payment was delinquent. *Id.*

---

[2] The majority of the facts are as alleged in the First Amended Complaint or the exhibits attached to the First Amended Complaint. See Fed. R. Civ. P. 10(c). However, the Court also considers facts set forth in documents attached to BANA's Motion to Dismiss, which are integral to the Amended Complaint and the authenticity of which is not disputed. *See Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)). Further, the Court takes judicial notice of matters in the public record, such as state court proceedings. *Trimble Navigation*, 484 F.3d at 705 (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

¶ 7. The letter stated, "We recently received your payment in the amount of $2,437.72. This was less than the total amount needed to bring your loan up to date. . . . The total amount due after we applied your payment is $34,297.32." *Id.* Shortly thereafter, on September 3, 2012, the Reeds received a letter from the Federal Home Loan Mortgage Corporation, or Freddie Mac, stating that BANA had sent notice that the Reeds' "mortgage payment has recently been delinquent." *Id.* ¶ 9. Since their Loan had just been modified, these letters made no sense to the Reeds. *Id.* ¶ 10. The Reeds called BANA to try to resolve the error. *Id.* They spoke to several BANA representatives, including David Everline on September 3, 2012 at 5:25 p.m., and Monique Whitley on September 4, 2012, at 1:15 p.m., attempting to fix the problem. *Id.* ¶ 10.

Despite the Reeds' efforts, the error was not resolved. On March 28, 2013, the Reeds received yet another letter from BANA advising them that they "were not approved for, and offered, a Freddie Mac Modification Trial Period Plan." *Id.* ¶ 10. The letter also stated that the Loan was "no longer eligible" for loan modification because, after being offered a Trial Period Plan for modification, the Reeds had supposedly informed BANA that they did "not wish to accept the offer." *Id.* Several months later, on September 5, 2013, the Reeds received twelve envelopes by certified mail containing twelve notices of intent to foreclose on the Property. *Id.* ¶ 12. When they called BANA to inquire about the foreclosure notices and to advise the lender that a valid loan modification was in place, they were told that there was no record of a loan modification with respect to the Property. *Id.*

Between September 5, 2013 and September 20, 2013, the Reeds called BANA approximately fifteen times in an attempt to resolve the issue, begging the managers to reinstate the modification, but to no avail. On September 25, 2013, they received another letter from BANA, stating: "We have reviewed your escalation of our decision that your loan is not eligible

3

for a loan modification. While we realize this decision comes at a difficult time in your life, we regret to inform you that your loan modification escalation has been denied." *Id.* ¶ 11.

Between September 1, 2012 to September 1, 2013, the Reeds made all payments required under the terms of the modified Loan. *Id.* ¶ 6.

Since then the Reeds have made no payments toward the Loan. Even so, no foreclosure action has ever been filed.[3]

On the basis of the above facts, the Reeds allege that BANA has: engaged in oppressive and abusive conduct in connection with their Loan, in violation of the FDCPA, 15 U.S.C. § 1692(d) (Count I); employed unfair and unconscionable means to collect on their Loan in violation of the FDCPA, 15 U.S.C. § 1692(f) (Count II); used unfair or deceptive trade practices in violation of the MCPA, Md. Code Ann., Com. Law § 13-301 (Counts III and IV); committed fraud[4] (Count VII); breached the loan modification agreement with the Reeds and breached the implied covenant of good faith and fair dealing (Count V); and failed to provide the Reeds with certain information when rejecting their loan modification application in violation of Regulation X, 12 C.F.R. § 1024.41(d),[5] one of the implementing regulations of RESPA (Count VI).

---

[3] The Reeds, however, suggest that BANA has in fact initiated a foreclosure action, and they allege that they saw their home listed on the internet as a foreclosure property in Prince George's County, Maryland. Am. Compl. ¶¶ 14-15. BANA insists that it has not filed an order to docket or other foreclosure complaint regarding the Property, and asks that the Court take judicial notice of this fact, which can be confirmed by a review of circuit court records for Prince George's County. The Court hereby takes judicial notice that as of the date of this Memorandum Opinion, there is no record of a foreclosure proceeding against the Property in Prince George's County Circuit Court. The Court instructs the parties to advise the Court as soon as possible if state foreclosure proceedings are initiated during the pendency of this action.

[4] The Reeds style this Count as "Intentional Misrepresentation." Intentional misrepresentation is not a cause of action in itself, but rather an element of a common law fraud claim. The Court will assume that the Reeds intended to bring Count VII as a fraud claim.

[5] The Reeds style this Count as "Violation of the Dodd-Frank Wall Street Reform and Consumer Act" and cite § 1413 of the Dodd-Frank Act in support of their claims. This particular provision of the Dodd-Frank Act amends the Truth-in-Lending Act (TILA) to allow consumers to assert a defense of recoupment in the context of loan origination where a creditor violates the TILA, 15 U.S.C. § 1639. As asserted by BANA, Dodd Frank Act § 1413 has no apparent applicability to this case, given that the Reeds do not bring any claims regarding their Loan's origination. The Reeds have subsequently clarified

As for damages, the Reeds allege that they have been harmed because BANA has initiated foreclosure proceedings. *See* Am. Compl. ¶¶ 13-15. This allegation, as will be addressed in Part III.A, *infra*, is patently at odds with facts in the public record.[6] Of more substance, the Reeds also claim that Plaintiff Marja Reed's application for a personal loan was recently rejected when she made application to another bank. *Id.* ¶ 16. She was purportedly told the reason for the rejection was that her BANA loan was in default and delinquent by four months. *Id.* Finally, the Reeds say that they have experienced stress and worry over losing their home, which has taken a toll on the emotional, mental, and physical health of the family. *Id.* ¶ 17.

BANA has moved to dismiss all counts, arguing pursuant to Federal Rule of Civil Procedure 12(b)(6) that the Reeds have failed to state a claim upon which relief may be granted.

## II. STANDARDS OF LAW

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [he or she] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). If pleadings allege fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under the heightened pleading standard of Rule 9(b), "[t]hese circumstances are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

---

that, in Count V, they actually intended to make a claim for violation of Regulation X, 12 C.F.R. § 1024.41 (Regulation X was amended by the Dodd Frank Act). Pls.' Opp'n to Defs.' Mot. Dismiss (Pls.' Opp'n) 14-15, ECF No. 33.
[6] *See* text accompanying note 3, *supra*.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A district court has the discretion to grant a motion to dismiss with or without prejudice. *Hinks v. Bd. of Educ. of Harford Cnty.*, CIV.A. WDQ–09–1672, 2010 WL 5087598, at *2 (D. Md. Dec. 7, 2010). Dismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his or her claim. *Id.* (citing *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008)).

### III. ANALYSIS

#### A. Damages

As a preliminary matter, the Court considers whether and to what extent there may be cognizable damages in this action. While these issues have not been raised or emphasized by any party at this stage, they obviously will have a bearing on the future course of this proceeding.

The Reeds suggest throughout the Amended Complaint that they have suffered because of BANA's alleged initiation of a foreclosure suit with respect to the Property. Am. Compl. ¶¶ 14, 15, 32, 49, 56. They say that they have been traumatized by seeing their home listed for sale on the Internet and by observing persons outside their house taking photographs of the Property. *Id.* ¶¶ 15, 56. These claims, however, appear to be entirely without foundation. The Court can find no record whatsoever of a foreclosure action related to the Property.[7] As such, it

---

[7] *See* text accompanying note 3, *supra*.

will not entertain a claim for *any* damages arising out of a nonexistent foreclosure action, to the extent that they are raised in the Amended Complaint.

The Reeds also claim mental and emotional damages stemming from BANA's alleged refusal to recognize the existence of a valid modification agreement and as a result of repeated notifications of intent to foreclose. Am. Compl. ¶¶ 14, 17, 32, 40. These claims may be viable under the FDCPA[8] and MCPA. *Dorris v. Accounts Receivable Mgmt., Inc.*, No. CIV.A. GLR-11-3453, 2013 WL 1209629, at *7 (D. Md. Mar. 22, 2013) ("Actual damages under the FDCPA include damages for emotional distress."); *Barry v. EMC Mortgage Corp.*, No. CIV.A. DKC 10-3120, 2012 WL 3595153, at *8 (D. Md. Aug. 17, 2012) (noting that emotional damages constitute an actual injury or loss compensable under the MCPA). Such harms, however, would generally *not* be recoverable, however, under RESPA,[9] nor would they be in connection with state law claims for breach of contract and fraud. *Aghazu v. Severn Sav. Bank*, No. PJM 15-1529, 2016 WL 808823, at *10 (D. Md. Mar. 2, 2016) (noting that damages under RESPA are usually limited to "pecuniary or economic damages that flow directly" from violation of the Act); *Richter v. N. Am. Van Lines, Inc.*, 110 F. Supp. 2d 406, 413 (D. Md. 2000) (citing Restatement (Second) of Contracts, § 353 (1981)) ("The general rule is that emotional disturbance is not a damage recognized for breach of contract."); *Hoffman v. Stamper*, 867 A.2d 276, 298 (Md. 2005) (holding that a plaintiff in a fraud action seeking noneconomic damages for emotional injury must show some objectively ascertainable consequential physical injury).

---

[8] The Reeds must, however, eventually show evidence that their claims for emotional distress damages under the FDCPA are "sufficiently articulated" and "not conclusory" in order to survive summary judgment and recover under the Act. *Dorris v. Accounts Receivable Mgmt., Inc.*, No. CIV.A. GLR-11-3453, 2013 WL 1209629, at *7 (D. Md. Mar. 22, 2013) (citing *Doe v. Chao*, 306 F.3d 170, 179-82 (4th Cir. 2002)).

[9] Even if claims for emotional distress were tenable under RESPA, the Court dismisses the Reeds' RESPA (Regulation X) claims on other grounds, as discussed in Part III.F., *infra*.

Finally, the Reeds assert that Plaintiff Marja Reed was denied a personal bank loan as a result of BANA's actions. Am. Compl. ¶ 16. With respect to some Counts, the Reeds also appear to allege that they should be able to recover what they term collection costs and late fees. *Id.* ¶¶ 38, 42. While, as a general proposition, pecuniary or economic damages may be cognizable with respect to the causes of action alleged in the Amended Complaint, the Court observes that the Reeds' allegations of economic harm are fairly nebulous at this stage. Indeed, the Court poses this question to all parties: Even if BANA has engaged in unlawful conduct vis-à-vis the Reeds, what *actual* economic harm have the Reeds suffered, given that they still apparently occupy the Property? As this case goes forward, the Reeds will have to demonstrate their entitlement to recover pecuniary damages with much greater precision during discovery.

The Court now addresses BANA's arguments to dismiss each of the Reeds' claims.

**B.  Fair Debt Collection Practices Act Claims (Counts I and II)**

In Count I, the Reeds claim that BANA violated the FDCPA, 15 U.S.C. § 1692d, by: (i) falsely advising them that they would qualify for a loan modification and that this modification would prevent foreclosure; and (ii) accepting payments from the Reeds under the guise that these payments were being applied pursuant to the modification agreement. Am. Compl. ¶ 25. In Count II, the Reeds allege that BANA violated the FDCPA, 15 U.S.C. § 1692f by (i) sending twelve notices of foreclosure; (ii) advising the Reeds that there was no record of a loan modification agreement; (iii) forcing the Reeds to repeatedly contact BANA with respect to the loan modification agreement; and (iv) failing to complete the loan modification in a timely fashion. Am. Compl. ¶ 30.  In response to these allegations, BANA contends that Counts I and II fail to state a claim because BANA is not a "debt collector" under the FDCPA. Defs.' Mot.

Dismiss FAC 5-6, ECF No. 28. BANA argues, instead, that it is a "creditor," and thus exempt from liability under the FDCPA. *Id.*

At this stage at least, the Court declines to dismiss the Reeds' FDCPA claims on this ground.

In general, the FDCPA prohibits abusive, deceptive, or unfair debt collection practices. *See* 15 U.S.C. § 1692. Fifteen U.S.C. § 1692d bars a debt collector from engaging in any conduct "to harass, oppress, or abuse any person in connection with the collection of a debt." Fifteen U.S.C. § 1692f provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." A consumer with debt may bring a private action to enforce these provisions under 15 U.S.C. § 1692k. To state a claim under the FDCPA, the consumer must allege that: (1) the defendant is a "debt collector" under the FDCPA, (2) the consumer is the "object of a collection activity arising from consumer debt," and (3) the defendant engaged in a "debt collection activity" prohibited by the FDCPA. *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 524 (D. Md. 2013) (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012)) (internal quotations omitted).

With respect to the first prong, the FDCPA defines a "debt collector," in part, as a person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A "creditor," on the other hand, is "any person who offers or extends credit creating a debt or to whom a debt is owed," 15 U.S.C. § 1692a(4).[10] Debt collector and creditor are "mutually exclusive" categories under the FDCPA,

---

[10] Accordingly, the FDCPA does not apply to any person collecting on a debt that the person itself originated. *See* 15 U.S.C. § 1692a(6)(F)(ii).

*Schlosser v. Fairbanks Capital Corp.,* 323 F.3d 534, 536 (7th Cir. 2003), and the FDCPA applies only to the collection activity of debt collectors, *see* 15 U.S.C. § 1692a(6).[11]

In the debt purchaser context, such as obtains in the case at bar, a person is classified as a debt collector or a creditor depending on that person's aim or intention when acquiring the consumer debt. Under the FDCPA, a creditor does *not* include "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Courts in this jurisdiction have thus concluded that "the assignee or transferee of a debt in default is a debt collector [and not a creditor] where it purchases the debt '*solely for the purpose of collection*.'" *Ademiluyi*, 929 F. Supp. 2d at 525 (D. Md. 2013) (emphasis added); *see also Allen v. Bank of Am. Corp.*, No. CIV. CCB-11-33, 2011 WL 3654451, at *7 n.9 (D. Md. Aug. 18, 2011) ("[W]here a servicer believes a loan to be in default at the time it commences servicing, courts have found it is not exempt from the FDCPA's definition of 'debt collector.'"). Accordingly, a person that acquires a loan exclusively for the purpose of collecting on a debt should be considered a "debt collector," while a person that purchases a loan for the purpose of *servicing* it may qualify as a "creditor." *See Ademiluyi*, 929 F. Supp. 2d at 525-26.

Applying these principles to this case, the key question is whether BANA, as assignee of the Loan, qualifies as either a creditor or a debt collector under the FDCPA. The Reeds do not expressly allege that their Loan was in default at the time of the Loan's transfer to BANA. *See* Defs.' Mot. Dismiss FAC 6; *see also* Am. Compl. ¶¶ 2-3 (alleging a "major accounting problem"

---

[11] Congress exempted creditors from liability under the FDCPA "because, unlike debt collectors, they 'generally are restrained by the desire to protect their good will when collecting past due accounts.'" *Ademiluyi*, 929 F. Supp. 2d at 525 (quoting S. Rep. No. 95-382, at 2 (1977)). Debt collectors, on the other hand, "might lack such self-restraint because they would have 'no future contact with the consumer and often are unconcerned with the consumer's opinion of them.'" *Ademiluyi*, 929 F. Supp. 2d at 525 (quoting S. Rep. No. 95-382, at 2 (1977)).

at the time of the Loan's transfer to BANA). But, contrary to BANA's suggestion, this omission does not foreclose a viable FDCPA claim. The Reeds do state that "[s]hortly after" BANA's acquisition of the Loan, they "began to get notices of intent to foreclose [sic]." Am. Compl. ¶ 3. This allegation, in the Court's preliminary view, provides a plausible basis for concluding that BANA may have purchased the Loan believing it to be in default. As such, BANA could very well have acquired the Loan simply to collect on the underlying debt. *See Allen*, 2011 WL 3654451, at *7 n.9; *see also Galante v. Ocwen Loan Servicing LLC*, No. CIV.A. ELH-13-1939, 2014 WL 3616354, at *30 (D. Md. July 18, 2014) ("In my view, defendant's central argument in support of dismissal—that because plaintiffs have alleged that they were not, in fact, in default, they effectively conceded that Ocwen is not a debt collector—is too clever by a half. It is noteworthy that, approximately two weeks after acquiring its interest in the mortgage, Ocwen allegedly sent plaintiffs a Notice of Intent to Foreclose. Here, as in *Allen*, the servicer's alleged treatment of the loan as being in default at the time of the acquisition of its interest is sufficient to qualify Ocwen as a 'debt collector.'").

Ultimately, a "fact-intensive inquiry" is necessary to determine whether the Reeds are correct that defendants purchased the Loan "solely" for the purpose of collection, or whether, as BANA suggests, the Loan was purchased only for servicing. *See Ademiluyi*, 929 F. Supp. 2d at 526. Since such an inquiry is not appropriate for resolution prior to discovery, BANA's Motion to Dismiss Counts I and II is **DENIED WITHOUT PREJUDICE**. BANA, of course, may raise the argument that it is not a "debt collector" on summary judgment, if appropriate.

**C.  Maryland Consumer Protection Act Claims (Counts III and IV)**

In Counts III and IV, the Reeds allege that BANA violated the MCPA, Md. Code Ann., Com. § 13-301(9) by falsely representing to the Reeds that it would enter a loan modification

agreement so that the Reeds would not lose their home, among other claims. Am. Compl. ¶¶ 37-38, 41-42. In its Motion to Dismiss the First Amended Complaint, BANA argues that the Court should dismiss the Reeds' "laundry list" of MCPA claims because the Reeds have failed to satisfy the heightened pleading standards under Federal Rule of Civil Procedure 9(b). Defs.' Mot. Dismiss FAC 6-7.

The Court disagrees with BANA.

The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices." Md. Code Ann., Com. § 13-301. In general, the MCPA proscribes fifteen broad categories of unfair or deceptive trade practices. Subsection 13-301(9), the provision at issue here, counts among these practices:

> Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with intent that the consumer rely on the same in connection with:
> (i)     The promotion or sale of any consumer goods, consumer realty, or consumer service;
> (ii)    A contract or other agreement for the evaluation, perfection, marketing, brokering or promotion of an invention; or
> (iii)   The subsequent performance of a merchant with respect to an agreement of sale, lease, or rental.

Md. Code Ann., Com. § 13-301(9).[12]

To bring an MCPA claim, a plaintiff must allege: "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Kaswell v. Wells Fargo Bank, N.A.*, No. CIV.A. RDB-13-2315, 2014 WL 3889183, at *5 (D. Md. Aug. 6, 2014) (quoting *Galante*, 2014 WL 3616354, at *25) (internal quotations omitted). In alleging a violation of § 13-301(9), as the Reeds do here, a plaintiff must also allege scienter – i.e., a knowing or intentional misrepresentation or omission on behalf of the Defendants. *See Luskin's,*

---

[12] The Court observes that an issue not raised by either party is whether some other component or subsection of the statute may apply to BANA's alleged conduct in this case.

*Inc. v. Consumer Protection Division*, 726 A.2d 702, 717 (Md. 1999).[13] In addition, a plaintiff

must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) if his

or her MCPA claim sounds in fraud. *See Allen*, 2011 WL 3425665, at *9; *see also Johnson v.*

*Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007).

In Counts III and IV, the Reeds assert in essence that BANA made various false

statements with respect to their prospects for loan modification. The Court thus agrees with

BANA that BANA's alleged violations of the MCPA sound in fraud, and that Rule 9(b) is the

appropriate metric for evaluating the sufficiency of the Reeds' allegations, *see id.* The Court does

not agree with BANA, however, that the MCPA claims have not been made with sufficient

particularity.

To begin, the Reeds have alleged a number of specific facts to support their claim that

BANA made false statements or misrepresentations within purview of § 13-301(9). They have

pled the dates and contents of apparently numerous contradictory letters and statements made by

BANA and its employees with respect to the loan modification agreement. Further, according to

the Amended Complaint, BANA represented to the Reeds that the loan modification terms were

in effect as of August 24, 2012, and the Reeds say that they complied with the modification

terms by returning two signed copies of the modification agreement by August 21, 2012 and

remitting certified funds in the amount of $2,111.48 to BANA before September 1, 2012. Am.

Compl. ¶¶ 4-5. The Reeds also allege that they timely made all payments in compliance with the

modification agreement from September 1, 2012 to September 1, 2013 (and they say that they

have receipts to verify the payments). *Id.* ¶¶ 6, 48. Yet, despite apparently entering into a loan

modification agreement with BANA, the Reeds contend that they received a letter from BANA

---

[13] Not all of the proscribed categories of conduct under § 13-301 require scienter. Subsections 13-301(1)
and (3), for example, do not. *See Luskin's*, 726 A.2d at 718.

on August 24, 2012, informing them that they were in default, and another letter from BANA on March 28, 2013, stating that they were denied a loan modification because that they did not wish to accept the offer of a modification agreement. *Id.* ¶¶ 7, 10.

The Reeds specifically identify the names of two BANA representatives to whom they spoke over the phone in an effort to resolve the problems they were experiencing with their loan modification, including the dates and times of the phone calls. *Id.* Notwithstanding their efforts to resolve the issues with the processing of their loan modification application, the Reeds allege that they thereafter received twelve notices of foreclosure on September 5, 2013. *Id.* ¶ 12. They also state that they received a letter from BANA on September 25, 2013 informing them that their Loan was not eligible for modification. *Id.* ¶ 11.

Beyond this, the Reeds adequately allege reliance and damages in connection with these misrepresentations. They state that they remitted certified funds to BANA in August 2012, relying on the fact that they would receive the loan modification if they complied with the terms of the contract they signed. *Id.* ¶ 5. They say they continued to make payments pursuant to the loan modification agreement between September 1, 2012 to September 1, 2013, based on their understanding that this agreement would be honored by Defendants. *Id.* ¶ 6. They allege that they were harmed by BANA's alleged misrepresentations, citing actual and emotional damages: that they lost the money they paid to BANA under the terms of the modification agreement, and that they suffered emotional harm from the threat of losing their home.[14] *Id.* ¶ 40.

In contrast, as to the scienter element of the Reeds' § 13-301(9) claims, the Court notes that the Reeds do not provide as many detailed facts in support. They broadly allege that BANA's conduct with respect to the misrepresentations was intentional or willful, *see id.* ¶¶ 25, 27, 42, 53, but these allegations are, at best, conclusory. Even so, various other facts alleged

---

[14] Again, emotional damages may be recoverable under the MCPA. *See* Part III.A, *supra*.

provide a plausible basis for the Court to infer that BANA acted with knowledge. The Amended Complaint, for example, makes clear that the Reeds contacted BANA about their loan modification agreement on multiple occasions, that BANA accepted the payments made pursuant to the loan modification agreement, and that BANA nevertheless refused to acknowledge that such an agreement was in place. *Id.* ¶¶ 6, 8, 10, 12, 14. Given this course of action, the Court finds that it is plausible that BANA's conduct with respect to the various alleged misrepresentations was knowing. Although barely, the Reeds' allegations of scienter here do pass muster.

The Court concludes that the Reeds have pled their MCPA claims with sufficient particularity. For this reason, BANA's motion to dismiss Counts III and IV is **DENIED WITHOUT PREJUDICE**.

### D.  Fraud Claim (Count VII)

In Count VII, the Reeds allege that BANA is liable for "intentional misrepresentation" for failing to provide a loan modification and for sending notices of intent to foreclose after the Reeds made the required payments and complied with the terms of the agreement. Am. Compl. ¶¶ 53-56. BANA argues in response that "intentional misrepresentation" is not a cause of action in itself, but rather an element of a fraud claim. Defs.' Mot. Dismiss FAC 11. BANA contends that, even if the Court were to treat Count VII as a fraud claim, the Reeds failed to allege sufficient facts with particularity to support a claim for fraud. *Id.* 11-12.

The Court agrees that Count VII should properly be styled as a fraud claim.[15] But for the reasons discussed in relation to the Reeds' MCPA claims, the Court again declines to dismiss the allegations.

---

[15] The Court will treat Count VII as a fraud claim, despite the fact that it was mislabeled. Plaintiff's counsel is instructed to properly refer to this claim as one in fraud in the future.

To allege common law fraud in Maryland, a plaintiff must plead (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *Moscarillo v. Prof'l Risk Mgmt. Servs.*, 921 A.2d 245, 254 (Md. 2007). Allegations of fraud implicate the heightened pleading standard under Fed. R. Civ. P. 9(b). *Harrison*, 176 F.3d at 784.

Claims involving misrepresentations or false statements to consumers which are actionable under the MCPA may not necessarily constitute common law fraud.[16] The MCPA bars a much broader range of "unfair or deceptive trade practices," *see* § 13-301,[17] many MCPA claims do not require scienter on the part of the defendant, *Luskin's*, 726 A.2d at 718,[18] and the MCPA permits recovery for emotional damages, which are generally not recoverable in common law fraud actions, *Hoffman*, 867 A.2d at 298. Here, however, the requisite elements for pleading common law fraud overlap significantly with the elements of the MCPA claim alleged by the Reeds, Md. Code Ann., Comm. § 13-301(9). Both causes of action require that the Reeds allege that (i) BANA made misrepresentations or false statements, (2) with knowledge, and that (3) the

---

[16] Indeed, the MCPA was designed to make claims involving deceptive practices easier to pursue. As stated in the text of the Act itself, the Maryland legislature found that existing laws and causes of action (such as common law fraud) were "inadequate," "poorly coordinated," and "not widely known" enough to provide protection to consumers against "the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit." Md. Code Ann., Com. Law § 13-102.

[17] The MCPA "defines unfair or deceptive trade practices with a nonexclusive enumeration of [fifteen] practices" listed in the "substantive core" of the Act, § 13-301. Comment, *Maryland's Consumer Protection Act: a Private Cause of Action for Unfair or Deceptive Trade Practices*, 38 Md. L. Rev. 733, 740 (1979). These practices are generally of three different types: prohibited (1) representations or statements, (2) telephone solicitation practices, and (3) other miscellaneous acts. *Id.* at 740-41.

[18] *See* text accompanying note 13, *infra*. *See also* 38 Md. L. Rev. at 742 (noting that only three of the categories of proscribed conduct under § 13-301 require proof of scienter).

Reeds relied upon these misrepresentations and (4) suffered damages as a result. *Compare Moscarillo* 921 A.2d at 254 (listing the elements of a common law fraud claim), *with Kaswell*, 2014 WL 3889183, at \*5 (listing the elements of an MCPA claim), *and Luskin's, Inc. v. Consumer Protection Division*, 726 A.2d at 717 (holding that § 13-301(9) MCPA claims require proof of scienter).

As previously discussed at length, the Reeds have alleged with sufficient particularity that BANA made various misrepresentations or false statements about the loan modification, that the Reeds relied on these misrepresentations, and that BANA made the representations and statements with knowledge of their falsity (or reckless disregard for the truth, as permitted to state a common law fraud claim). While the Reeds may not recover for emotional damages with respect to their common law fraud claim, they also allege actual harm in the amount of the sums paid to BANA pursuant to the loan modification agreement, which would be recoverable in a common law fraud claim. For these reasons, then, the Court will permit the Reeds' claim of common law fraud to proceed, and BANA's Motion to Dismiss this Count is **DENIED WITHOUT PREJUDICE**.[19]

## E. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Claims (Count V)

In Count V, the Reeds contend that BANA breached the loan modification agreement of August 2012 when it terminated the modification terms without notice. Am. Compl. ¶¶ 43-44.[20] The Reeds also appear to bring a claim for breach of the implied covenant of good faith and fair

---

[19] This is not to say that, should the matter go to trial, the Reeds would be entitled to a double recovery – one under the MCPA count and one under the common law fraud count.

[20] The Reeds also suggest that BANA breached the modification agreement by initiating foreclosure proceedings. But as earlier stated, BANA has not actually filed any foreclosure action against the Reeds. To the extent, therefore, that Count V is premised upon a factual assertion that BANA breached its agreement with the Reeds by foreclosing upon them, BANA's motion to dismiss this claim is **GRANTED**.

dealing. In response, BANA asserts the Reeds have failed to provide sufficient facts to support a breach of contract claim. Defs.' Mot. Dismiss FAC 8. BANA also argues that the breach of implied covenant of good faith and fair dealing claim should be dismissed as a matter of law, because Maryland law does not recognize such a claim separate from a breach of contract claim. *Id.* 8-9.

With respect to BANA's first argument, the Court disagrees and finds that the Reeds have alleged facts sufficient to support their breach of contract claim.

Under Maryland law, the elements of a breach of contract claim are (1) a contractual obligation, and (2) a material breach of that obligation. *Cowan Sys., LLC v. Choctaw Transp., Inc.*, No. WDQ–11–CV–0367, 2011 WL 2791248, at *2 (D. Md. July 14, 2011). In support of their breach of contract claim, the Reeds assert that they entered into a loan modification agreement in August 2012. Am. Compl. ¶ 43. They claim that this agreement included the following provision:

> If my representation and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on September 1, 2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.

*Id.* ¶ 45. The Reeds then say that, despite their compliance with the language of the agreement and BANA's acceptance of their payments, *id.* ¶ 46, the loan modification never went into effect, and that BANA effectively terminated the agreement in March 2013, *id.* ¶ 10. In light of these allegations, the Court concludes that the Reeds have sufficiently pled (1) that BANA owed them a contractual obligation under the terms of the loan modification agreement, and (2) that BANA breached that obligation.

Concerning the Reeds' breach of implied covenant of good faith and fair dealing claim, however, the Court agrees with BANA. "Maryland does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing; the allegations making up such a claim should be pursued under a plaintiff's breach of contract claim." *Magnetti v. Univ. of Maryland*, 909 A.2d 1101, 1105 n.3 (2006), *aff'd,* 937 A.2d 219 (2007). Thus, the Court will dismiss any separate claim made by the Reeds against BANA for breach of the implied covenant of good faith and fair dealing.

For these reasons, BANA's motion to dismiss Count V is **DENIED WITHOUT PREJUDICE** in so far as BANA seeks to dismiss the Reeds' breach of contract claim, but BANA's motion is **GRANTED** with respect to any separately alleged breach of the implied covenant of good faith and fair dealing claim.

## F.  Regulation X (RESPA) Claim (Count VI)

In Count VI, the Reeds claim that BANA violated Regulation X, 12 C.F.R. § 1024.41,[21] when BANA failed to provide the Reeds with the reasons for denying their loan modification application, and when BANA did not provide the Reeds with the results of any calculation used to deny the application. Am. Compl. ¶ 48. In moving to dismiss this Count, BANA argues, among other things, that this Count should be dismissed with prejudice because the conduct at issue occurred in 2013 – a date *before* the effective date of the applicable regulation. Defs.' Mot. Dismiss FAC 9, 11.

The Court agrees with BANA.

---

[21] As noted above, the Reeds cite an inappropriate provision of the Dodd-Frank Act in support of their claims in Count VI. *See* text accompanying note 5, *supra*. They have subsequently clarified that they intended to bring their claims under 12 C.F.R. § 1024.41. Rather than require the Reeds to re-plead this Count, the Court will assume that it was properly pled for purposes of the motion to dismiss.

Twelve C.F.R. § 1024.41 is a Consumer Financial Protection Bureau (CFPB) regulation promulgated pursuant to § 1022(b) of the Dodd-Frank Act, 12 U.S.C. 5512(b), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* Among other things, it bars a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a complete loan modification application. Twelve C.F.R. 1024.41(d), the specific provision at issue in this case, requires loan servicers to provide certain information to borrowers if their loss mitigation applications are denied.

Notably, 12 C.F.R. § 1024.41 became effective on January 10, 2014. The conduct at issue in this Count, however, occurred in March 2013 (when BANA sent the Reeds a letter notifying them that their loan was no longer eligible for a modification) and again in September 2013 (when BANA sent the Reeds another letter informing them that their loan modification escalation was denied) – dates that occurred decidedly before 12 C.F.R. § 1024.41 went into effect. *See* Am. Compl. ¶¶ 10, 11. The key question that the Court must address, then, is whether 12 C.F.R. § 1024.41 is retroactive, such that it may apply to BANA's 2013 conduct.

In general, "[r]etroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). As the Fourth Circuit has stated, "[t]his maxim is reflected in a presumption against statutory retroactivity that is 'deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.'" *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 458 (4th Cir. 2011) (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994)). Indeed, courts should generally not construe laws to have retroactive effect "unless their language requires this result." *Bowen,* 488 U.S. at 208. In *Fernandez-Vargas v. Gonzales*, the Supreme Court adopted the following test for determining whether a statute or regulation should retroactively apply to conduct which preceded the law's enactment:

We first look to whether Congress has expressly prescribed the statute's proper reach, and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying our normal rules of construction. If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment. If the answer is yes, we then apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the absen[ce of] a clear indication from Congress that it intended such a result.

548 U.S. 30, 37–38 (2006) (internal citations and quotations omitted).

Courts in this jurisdiction have not expressly addressed the issue of whether 12 C.F.R. § 1024.41 should apply retroactively. However, in *Campbell v. Nationstar Mortgage*, 611 F. App'x 288, 296-97 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 272 (2015), the Sixth Circuit applied the Supreme Court's *Fernandez-Vargas* analysis to the regulation, and concluded that the regulation should *not* apply retroactively. Addressing the first prong of the *Fernandez-Vargas* test, the court reasoned that the regulation's January 10, 2014 effective date reflected an intent that the provision *not* apply to conduct occurring prior to that date. *Id.* at 297. The court also emphasized that the effective date was the product of an important compromise between the interests of consumer groups and industry. *Id.* Citing the history of the regulation, the Sixth Circuit noted that the CFPB received comments both from consumer groups (which generally advocated for earlier effective dates) and from industry (which generally urged a later effective date to allow time to comply with the new rules), and that it "struck a balance" among those competing interests by selecting the January 10, 2014 effective date. *Id.* (citing Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696–01 (February 14, 2013) (codified at 12 C.F.R. pt. 1024)). The court also highlighted that the January 10, 2014 effective date brought the amended Regulation X's effective date "in line with the effective dates of other regulations that the CFPB issued to implement provisions of the

21

Dodd Frank Act," in an effort to facilitate compliance. *Campbell*, 611 Fed. App'x at 297 (citing Amendments to the 2013 Mortgage Rules Under the Equal Credit Opportunity Act (Regulation B), Real Estate Settlement Procedures Act (Regulation X), and the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 60382–01, 60384 (October 1, 2013)).

Given the absence of clear language in the regulation mandating retroactive application, and given the regulation's legislative history, the Court agrees with the Sixth Circuit's analysis and concludes, for the reasons highlighted by the court in *Campbell*, that 12 C.F.R. § 1024.41 should not apply retroactively.[22] *See Campbell*, 611 Fed. App'x 297-98; *see also Lage v. Ocwen Loan Servicing LLC*, No. 14-CV-81522, 2015 WL 7294854, at *8-10 (S.D. Fla. Nov. 19, 2015) ("[I]n order for a borrower to avail himself or herself of Regulation X's protections, the borrower's application must be received by the servicer after the Effective Date. . . . By imposing an effective date of January 10, 2014, the CFPB intended to institute a clear starting point with respect to when a servicer's obligations would be triggered.").

Accordingly, BANA's motion to dismiss Count VI is **GRANTED**, and the Reeds' Regulation X claim is **DISMISSED WITH PREJUDICE**.

---

[22] The Court need not address the second inquiry in the *Fernandez-Vargas* test – namely, whether applying the regulation to the party objecting (in this case, BANA) would affect that party's rights. Put simply, the Court finds that applying normal rules of construction to the regulation is sufficient to satisfy the Court that 12 C.F.R. § 1024.41, with a clearly proscribed "effective date," is not retroactive. *Fernandez-Vargas*, 548 U.S. at 37-38 (stating that a court need only look to the consequences of retroactive application in a particular case if the effort to draw "a comparably firm conclusion about [a statute's] temporal reach" "fails"). Even if the Court were to address the second inquiry in the *Fernandez-Vargas* analysis, however, the Court finds that the retroactive application of the regulation would clearly affect BANA's substantive rights, as it would impose many new duties on BANA and expose it to liability under RESPA for failing to comply with the extensive requirements of the new regulation.

## IV. CONCLUSION

For the foregoing reasons, BANA's Motion to Dismiss the First Amended Complaint (ECF No. 28) is **GRANTED IN PART** and **DENIED IN PART**, as set forth in the accompanying Order.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**June 10, 2016**